1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES LEWIS, et al.,**<br><br>                    **Plaintiffs,**<br><br>     **v.**<br><br>**CITY OF FRESNO, et al.,**<br><br>                    **Defendants.** | **1:08-cv-01062-OWW-GSA**<br><br>**MEMORANDUM DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST JAMES LEWIS (Doc. 75)** |

## I. **INTRODUCTION**.

James Lewis ("Plaintiff") proceeds with an action against the City of Fresno ("the City"), Jerry Dyer ("Dyer"), Robert Nevarez ("Nevarez"), John Romo ("Romo"), Greg Garner ("Garner"), Anthony Martinez ("Martinez"), and multiple Doe defendants.  Plaintiff filed a first amended complaint ("FAC") on September 23, 2009. (Doc. 45).

The City, Dyer, Nevarez, and Romo filed a motion for summary judgment against Plaintiff on May 10, 2011. (Doc. 75).  Plaintiff filed opposition to the motion for summary judgment on June 6, 2011.  (Doc. 81).

## II. **FACTUAL BACKGROUND**.

Plaintiff has been employed as a peace officer with the Fresno Police Department ("Department") since 1986.  In 2006, Plaintiff

**1**

1  held the rank of sergeant with the Department.

2      In January 2006, John Romo ("Romo") was a sergeant with the
3  Department and was the supervising officer for the Department's
4  Duty Office.   Romo issued a memorandum on January 21, 2006
5  prohibiting personnel from outside the Duty Office from reviewing
6  records relevant to overtime assignments.

7      On February 21, 2006, Plaintiff complained to Captain Lydia
8  Carrasco that he believed Romo was assigning overtime in a
9  disparate manner and discriminating against Plaintiff.   Plaintiff
10 further complained that Romo was restricting Plaintiff's access to
11 information regarding overtime assignments.

12     On March 1, 2006, the Fresno Police Officer's Association
13 ("FPOA") issued a memorandum stating that it would pursue an
14 informal grievance against Romo on Plaintiff's behalf for alleged
15 disparate treatment in violation of the Department's Standing
16 Orders 2.4.8 and 2.5.1.   On May 19, 2006, the Department issued a
17 response to the FPOA memorandum in which the Department agreed to
18 form a committee to draft a recommendation for a new overtime
19 policy.   Plaintiff was assigned to serve on the committee.

20     On July 8, 2006, Plaintiff went to the Duty Office to view
21 records related to overtime assignments and to obtain a copy of the
22 January 21, 2006 Romo memorandum.   Plaintiff instructed Duty
23 Officer Barajas that Romo's memorandum was void and ordered Barajas
24 to permit him to view the overtime records.   Barajas complied.
25 Plaintiff was subsequently investigated by Internal Affairs for
26 allege violations of Department policy related to giving
27 conflicting orders and disciplined.

28 ///

**2**

1

### III. **LEGAL STANDARD**.

2      Summary judgment/adjudication is appropriate when "the

3 pleadings, the discovery and disclosure materials on file, and any

4 affidavits show that there is no genuine issue as to any material

5 fact and that the movant is entitled to judgment as a matter of

6 law." Fed. R. Civ. P. 56(c). The movant "always bears the initial

7 responsibility of informing the district court of the basis for its

8 motion, and identifying those portions of the pleadings,

9 depositions, answers to interrogatories, and admissions on file,

10 together with the affidavits, if any, which it believes demonstrate

11 the absence of a genuine issue of material fact." *Celotex Corp. v.*

12 *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

13 (1986) (internal quotation marks omitted).

14      Where the movant will have the burden of proof on an issue at

15 trial, it must "affirmatively demonstrate that no reasonable trier

16 of fact could find other than for the moving party." *Soremekun v.*

17 *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With

18 respect to an issue as to which the non-moving party will have the

19 burden of proof, the movant "can prevail merely by pointing out

20 that there is an absence of evidence to support the nonmoving

21 party's case." *Soremekun*, 509 F.3d at 984.

22      When a motion for summary judgment is properly made and

23 supported, the non-movant cannot defeat the motion by resting upon

24 the allegations or denials of its own pleading, rather the

25 "non-moving party must set forth, by affidavit or as otherwise

26 provided in Rule 56, 'specific facts showing that there is a

27 genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting

28 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct.

**3**

2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id*. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## IV. DISCUSSION.

### A. FEHA Claim

California's Fair Employment and Housing Act ("FEHA") affords California employees broad protection against discrimination, harassment, and retaliation on any of a wide range of impermissible bases. *McDonald v. Antelope Valley Community College Dist.*, 45 Cal. 4th 88, 105 (Cal. 2008). The FAC asserts two FEHA claims: (1) a racial discrimination claim based on disparate assignment of overtime hours; and (2) a retaliation claim based on the Department's disciplinary action against Plaintiff for his July 8, 2006 conduct.

#### 1. Statute of Limitations

Employees who believe they have been discriminated against generally have one year in which to file an administrative complaint with California's Department of Fair Employment and

**4**

Housing ("DFEH"), the agency charged with administering California's Fair Employment and Housing Act ("FEHA"). *McDonald*, 45 Cal. 4th at 105 (citing Cal. Gov. Code 12960(d)). Exhaustion of FEHA's administrative remedy is mandatory; an employee may not proceed in court with a FEHA claim without first obtaining a right-to-sue letter from the DFEH. *Id.*

The governing statute of limitations for FEHA's administrative process provides in part:

> No [DFEH] complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred … ." It then identifies four exceptions: (1) a 90-day extension in instances of delayed discovery of the unlawful practice; (2) a one-year extension in certain instances of delayed discovery of the identity of the actual employer; (3) a one-to-three-year extension for Ralph Hate Crimes Act (Civ. Code, § 51.7) violations in cases of delayed discovery of the perpetrator's identity; and (4) an extension to one year after an aggrieved party achieves the age of majority if the misconduct occurred while the party was a minor (§ 12960, subd. (d)(1)-(4)). We discern in this provision no basis for limiting the application of equitable tolling.

*Id.* at 106-07.

Defendants contend that Plaintiff failed to file his DFEH complaint within the one year proscribed by section 12960(d). Defendants note that paragraph 17 of the FAC alleges that Plaintiff first raised concerns to Captain Lydia Carassco about Romo's disparate assignment of overtime and restrictions on overtime information on February 21, 2006. It is undisputed that Plaintiff did not file his DFEH complaint until May 21, 2007, one year and three months later.

Plaintiff contends that his DFEH complaint was timely under the continuing violation doctrine. Under California's continuing violation doctrine, an employer is liable for actions that take

**5**

place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period. *E.g., Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1057 (Cal. Ct. App. 2005). The continuing violation doctrine applies where alleged discrimination is based on a temporally related and continuous course of conduct; "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* at 1058, 1057.

Plaintiff contends that the discriminatory conduct he complains of continued until May 2007, although Plaintiff does not specifically identify any discriminatory conduct related to the assignment of overtime and access to overtime records occurring after 2006. Nevertheless, a key event underlying the discrimination claim alleged in Plaintiff's DFEH complaint is enforcement of the Romo memo against Plaintiff during his visit to the duty office on July 8, 2006. The July 8 incident is undeniably part of the continuous course of conduct underlying Plaintiff's DFEH complaint, because an important component of Plaintiff's discrimination claim is that access to overtime information was restricted in order to facilitate the discriminatory assignment of overtime hours. Plaintiff's DFEH complaint was timely under the continuing violation doctrine, as it was filed within one year of the July 8, 2006 incident-- an occurrence that was part of a continuous course of conduct allegedly designed to perpetuate the

**6**

discrimination Plaintiff complains of.[1]

Finally, as noted in the Memorandum Decision denying Defendant's motion to dismiss, FEHA's limitations period is equitably tolled "while the employee and employer pursue resolution of any grievance through an internal administrative procedure." *McDonald*, 45 Cal. 4th at 108. Plaintiff is entitled to equitable tolling for the time period during which he was pursuing his petition for writ of mandamus concerning the disciplinary action taken against him. Plaintiff is also entitled to tolling for the time period during which he was pursuing an his grievance through the FPOA. *McDonald*, 45 Cal. 4th at 108 (tolling applied for period in which informal grievance was pursued with employer). Defendants' motion to dismiss Plaintiffs' FEHA claims as time barred is DENIED.

**2. Discrimination Claim**

FEHA makes it an "unlawful employment practice" for any employer "because of the race…to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code, § 12940(a). The elements of a FEHA claim for employment discrimination are (1) the employee's membership in a

---

[1] Plaintiff also contends he did not have reason to know of the alleged discrimination until commencement of the Internal Affairs investigation. Plaintiff maintains that the Internal Affairs investigation first put Plaintiff on notice that he had been treated differently from other sergeants who had attempted to view the duty logs and back orders; Plaintiff does not explain why he believed this disparate treatment was motivated by racial discrimination. None of the evidence cited by Plaintiff in his Separate Statement or Response to Defendant's separate statement concerning facts revealed in the Internal Affairs investigation suggest that racial animus motivated the conduct complained of. (Exhibits 9, 11, and 27 to Church Decl.). Rather, Plaintiff's argument is based on his representation that, when he learned he was treated differently from other sergeants who had requested access to overtime information, he believed it was because he was African American.

classification protected by the statute; (2) discriminatory animus on the part of the employer toward members of that classification; (3) an action by the employer adverse to the employee's interests; (4) a causal link between the discriminatory animus and the adverse action; (5) damage to the employee, and (6) a causal link between the adverse action and the damage. *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 713 (Cal. Ct. App. 2008).

FEHA's discrimination provision addresses only explicit changes in the "terms, conditions, or privileges of employment." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (Cal. 2010) (citing (§ 12940(a)). In the case of an institutional or corporate employer, the institution or corporation itself must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action. *Id.*

Plaintiff's discrimination claim under FEHA is predicated on three actions taken against him that he contends were racially motivated: (1) denial of overtime opportunities to Plaintiff; (2) denial of access to overtime records to Plaintiff; and (3) disciplinary action taken against Plaintiff for his conduct on July 8, 2006. (FAC at 8-9). The FAC also recounts sporadic incidents of alleged racism occurring prior to 2006, but none of these incidents are related to Romo or other actors involved in the conduct giving rise to the claims asserted in the FAC.[2]

---

[2] For example, Plaintiff alleges that: (1) in 2001, Chief Dyer was photographed holding a noose; (2) in the 1990's, an officer displayed a Hitler poster in his office and the Department responded with a memo cautioning against "inappropriate" items at work but did not treat the incident as a "race or hate

1   Defendants contend that Plaintiff's FEHA claim is subject to

2   summary judgment because Plaintiff presents no evidence that the

3   conduct he complains of was motivated by racial animus. Plaintiff

4   contends that the fact that he was treated differently than

5   similarly-situated officers provides circumstantial evidence of

6   racial discrimination.

7                **a. Overtime Assignments and Access to Records**

8        Defendants submit that Romo's overtime assignments were

9   motivated by his personal friendships with the patrol sergeants who

10  received preferential treatment. (Defendants Statement of

11  Undisputed Material Fact ("DMUF") No. 3). Plaintiff disputes

12  Defendants' contention. Plaintiff avers that he was treated

13  differently from non-African American sergeants at the department,

14  and that such treatment is based on racism. Specifically,

15  Plaintiff contends that non-African American sergeants were allowed

16  to access overtime records notwithstanding Romo's memorandum, while

17  Plaintiff was not, causing Plaintiff to "conclude that Romo was

18  racially biased against him." (Doc. 81, Plaintiff's Response to

19  DMUF No. 3). Plaintiff cites the following evidence in support of

20  his contention that Romo's actions were racially motivated:

21

22  crime"; (3) an African American officer was tested for steroids while at the
    Police Academy, but other officers capable of bench-pressing 500 lbs. have not
23  been tested; (4) one unit within the department was, at one time, almost entirely
    comprised of Hispanic officers; (5) an African American officer involved in a
24  shooting was required to return to patrol, whereas white officers were not; (6)
    the Department started a program to recruit Southeast Asian officers, but not
25  African Americans; (7) Chief Dyer has referred to African American's as "those
    people"; (8) higher ranking African American officers are not treated with the
26  same respect as their peers; and (9) there are positions which no African
    American has held at the Department such as homicide sergeant, SWAT sergeant, and
27  motors sergeant. (Opposition at 6-7). These allegations relate to whether a
    racially hostile work environment existed and whether policy makers had notice
28  of racial animus in the workplace that was permitted to operate.

                                      **9**

Church Declaration,
**Exhibit 1,** 02/21/06 Lewis email to FPOA;
**Exhibit 7,** Snow RT 27:12-22, 29:15-24, 30:3-31:5 33:3-11, 45:15-19, 55:1-7;
**Exhibit 9,** Lewis RT 89:17-94:1
**Exhibit 11,** Lewis IA RT 22:3-15; 24:5-19; 32:25-33:25
**Exhibit 27,** 03/01/06 Informal Grievance

(Id.).

Exhibit 1 to Ms. Church's declaration is an email from Plaintiff to Lydia Carrasco sent on February 21, 2006. In his February 21 email to Carrasco, Plaintiff complained that Sergeant Hodge was receiving special treatment in obtaining overtime hours due to his relationship with Romo; it provides no evidence that Romo's conduct was racially motivated, only that he received special treatment and was not African-American.

Exhibit 7 to Ms. Church's declaration consists of excerpts from the deposition of Sergeant Garry Snow. Nothing in Snow's deposition testimony supports an inference that Plaintiff was treated differently on account of his race. To the contrary, Snow's deposition indicates that other sergeants were also denied access to overtime records, and that Snow believed Plaintiff was singled out for disciplinary action after the June 8, 2006 incident because Plaintiff caused the Department to scrutinize Romo's overtime allocation practices.

Exhibit 9 to Ms Church's declaration consists of excerpts from Plaintiff's deposition. In response to a question from Defense counsel asking Plaintiff to explain why he felt there were "racial concerns" raised by information disclosed during the Internal Affairs investigation, Plaintiff responded that he inferred from the "essence and the tones" of certain written communications attached to the Internal Affairs report regarding the June 8, 2006

**10**

incident that there was "some animosity or something going on." (Doc. 81-6, Ex. 9 at 89-90). Plaintiff also stated in his deposition that Romo's memorandum restricting access to overtime records was not enforced against other "similarly-situated sergeants." Plaintiff's deposition does not specifically identify acts of racial discrimination by Romo.

Exhibit 11 to Ms. Church's declaration contains excerpts from statements made during the Internal Affairs interview. The portions of Exhibit 11 cited by Plaintiff to oppose DUMF No. 3 recount Snow's statements that Plaintiff was being treated differently than other sergeants. However, nothing Snow said in the Internal Affairs interview mentions or supports an inference of racial animus. To the contrary, Snow's statements reveal that, in his mind "the only reason" for Romo's disparate treatment of Plaintiff with respect to accessing overtime records was "a personnel issue that somebody is upset because they've been challenged the way [sic] business was done on overtime." (Doc. 81-6, Ex. 11 at 22).

Exhibit 27 to Ms. Church's declaration is the informal grievance form Plaintiff filed on February 21, 2006 regarding Romo's assignment of overtime. The grievance does not allege racial discrimination, and nothing alleged in the grievance supports an inference that Romo's alleged misconduct was racially motivated.

Plaintiff has no direct evidence that Romo's overtime assignments were motivated by racial animus. Although Plaintiff lacks direct evidence of discriminatory intent, he may rely on the *McDonnell Douglas* framework to overcome summary judgment. *See,*

*e.g., Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (Cal. 2000).

> California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination...This so-called McDonnell Douglas test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained.

> ...[T]he McDonnell Douglas test places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled. While the plaintiff's prima facie burden is "not onerous," he must at least show " 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a [prohibited] discriminatory criterion."

> ...Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) *some other circumstance suggests discriminatory motive.*

*Id.* (citations omitted, emphasis added).

Plaintiff satisfies the first element of the *McDonald Douglas* framework, as he is African American and a member of a protected class. Plaintiff also satisfies the adverse action element, as it is undisputed he was denied access to overtime opportunities. Plaintiff presents no evidence to establish Romo's overtime assignments were motivated by racial discrimination, however.

Plaintiff bases his claim of racial discrimination on alleged disparate treatment. As an initial matter, the extent to which

**12**

Plaintiff was treated differently from similarly-situated sergeants is unclear.   It is undisputed that other patrol sergeants, including non-African American officers, were injured by, and complained about, Romo's disparate assignment of overtime.   There is no evidence that Plaintiff was treated more harshly than these other disadvantaged officers with respect to the amount of overtime they were assigned.   Plaintiff contends that Romo's memo was only "consistently enforced" against him, while other sergeants were permitted access to overtime records notwithstanding the Romo memo. Plaintiff's evidence does not establish how many times the Romo memo was enforced against him as opposed to other officers.

According to the FAC, Plaintiff sent an email to Captain Carrasco on February 21, 2006 complaining that Romo's memo "was expired and that its continued enforcement was limited to Plaintiff."   (FAC at 4).   The only other allegation in the FAC concerning enforcement of the Romo memo against Plaintiff concerns the July 8, 2006 incident in which Plaintiff was ultimately granted access to the overtime records.   Based on the allegations of the FAC and the arguments and evidence advanced by Plaintiff in opposition to summary judgment, it appears Plaintiff only attempted to access records on two occasions after the issuance of Romo's memo and was only denied access once.   The record demonstrates that other officers were also denied access to overtime records pursuant to Romo's memo.   (Doc. 75-7, Mana Dep. RT at 51); (Doc. 75-13, Barajas Dec. at 2).

Assuming *arguendo* that Plaintiff was treated differently from some of his peers, there is no evidence such disparate treatment was racially motivated.   Barajas, the officer working in the duty

**13**

office during Plaintiff's July 8, 2006 visit, has submitted a statement under penalty of perjury which indicates that his attempt to enforce the Romo memorandum during the July 8 incident was not based on racial discrimination, and that he has never observed any duty office policies discriminating against officers on the basis of race or ethnicity.  (Doc. 75-13, Barajas Dec. at 2).  Barajas' statement belies Plaintiff's speculative contention that Romo's memorandum was selectively enforced against him, only, on the basis of his race.  Plaintiff's supposition that enforcement of Romo's memorandum against him was based on racially discriminatory motives is not supported by evidence that gives rise to an inference of race-based discrimination.

Although intent is ordinarily a question of fact for the jury, and although "very little" evidence is required to create a triable issue of fact as to an employer's motive, Plaintiff does not present *any* evidence that either Romo's overtime assignments or enforcement of the Romo memorandum were racially motivated. Rather, the most plausible interpretation of the evidence is that Romo favored "other sergeants."  It must be inferred that the others were not African-American.  Without more, the fact that Plaintiff was allegedly treated differently from some select officers does not create a triable issue of fact regarding discriminatory intent.  As one district court has reasoned:

> Although courts have found that "proof of discriminatory motive . . . can *in some situations* be inferred from the mere fact of differences in treatment," *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 52 L. Ed. 2d 396, 97 S. Ct. 1843. (1977); *see also Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991) (quoting same), Plaintiff has neither demonstrated that he was treated differently from those similarly situated nor provided

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> *corroborating evidence* of discrimination that, in
> previous cases, has supported the inference that a
> defendant acted from discriminatory motives. *See, e.g.,*
> *Freeman*, [125 F.3d 723, 738 n.6 (9th Cir. 1997)](noting
> that abusive epithets may be evidence of intentional
> discrimination); *Sischo-Nowneja*d, 934 F.2d at 1112 ("The
> fact that stereotyped remarks were made by [Plaintiff's]
> superiors at the same time they were subjecting her to
> less favorable working conditions is sufficient to raise
> an inference of discriminatory intent."). In this case,
> there is no evidence of discriminatory treatment or
> discriminatory motive.

*Sutton v. Stewart*, 22 F. Supp. 2d 1097, 1108 (D. Arizona 1998)
(emphasis added).

In essence, the only evidence Plaintiff offers in support of his contention that Romo's actions were racially motivated is the fact is that Plaintiff is an African American and was treated differently from some non-African American officers; this evidence is insufficient absent any corroborating evidence of racial animus or otherwise suggesting discriminatory intent.[3] *See, e.g., id.* To hold otherwise would be to countenance a standard under which any disparate action taken against a member of a protected class is presumed discriminatory because of the complaining party's race. Plaintiff's opposition to the motion for summary judgment presents no direct evidence of discriminatory motive and does not satisfy the McDonald Douglas framework for establishing a triable issue of fact. Defendants motion for summary judgment on Plaintiff's FEHA claim for racial discrimination is GRANTED with respect to assignment of overtime hours and access to overtime records.

///
///

_____

[3] There is no nexus between the sporadic incidents of racism Plaintiff alleges, such as an officer displaying a Hilter poster in the 1990's, and Romo's conduct.

### b. Disciplinary Action

The FAC alleges that "the Department's initiation and prosecution of disciplinary action related to Plaintiff's July 8, 2006 conduct was...racially motivated." (FAC at 8). It is undisputed that the Deputy Chief of Police for the Department, Robert Nevarez, authorized the Internal Affairs investigation and ensuing disciplinary action against Plaintiff after receiving a complaint regarding Lewis' conduct during the July 8, 2006 incident. (Doc. 75-12, Nevarez Decl. at 1). Nevarez directed the Commander of the Southwest District, Captain Greg Garner, to conduct the Internal Affairs investigation. Plaintiff presents no evidence that either Nevarez or Garner's actions was motivated by racial animus.

Plaintiff contends that Romo and Lt. Brogdon "instigated" the Internal Affairs investigation against him. Plaintiff cites Exhibits 4, 7, and 21 to Ms. Church's declaration in support of this contention. (Doc. 81-1, Plaintiff's Response to DUMF No. 15). Exhibit 4 is a Memorandum to Captain Garner from Anthony Martinez which indicates that Brogdon forwarded an email to Martinez from Barajas documenting the July 8, 2006 incident. At the end of the Memorandum, Martinez recommended that Plaintiff "be interviewed for potential violation of Department policy." Exhibit 7 provides excerpts of the deposition testimony of Snow. In the portions of Snow's deposition cited by Plaintiff, Snow recounts his belief that Romo had caused a complaint to be filed regarding the July 8, 2006 incident because he was upset Plaintiff made his initial overtime grievance against Romo. Snow's testimony does not provide the foundation for Snow's belief. Finally, Exhibit 21 is an email

16

exchange between Romo and Barajas regarding the July 8 incident.

Exhibits 4, 7, and 21 do not suggest that Romo and Brogdon instigated Nevarez's decision to authorize the Internal Affairs Investigation.  To the contrary, these exhibits only reflect that Romo and Brogdon followed the chain of command by informing Martinez of the July 8 incident.  Martinez then relayed the facts to Garner.  Garner, in turn, notified Nevarez, who made the ultimate decision to initiate the Internal Affairs investigation.

There is no evidence that Romo was motivated by racial animus. Nor does Plaintiff present any evidence that Brogdon was motivated by racial discrimination.  Even assuming *arguendo* Romo and Brodgdon harbored racial animus when they reported the July 8 incident to Martinez, there is no sufficient causal link between any animus harbored by Romo and Brogdon and Nevarez's ultimate decision to order the Internal Affairs investigation.  Although California recognizes the "cat's paw" doctrine, pursuant to which the innocence of a decision maker does not bar discrimination claims if the decision maker acted as a mere conduit of another's prejudice, *see, e.g., Reid v. Google, Inc.*, 50 Cal. 4th 512, 542 (Cal. Ct. App. 2010), the cat's paw doctrine applies where the party accused of discrimination was a "direct and important participant" in the decision making process, *see DeJung v. Superior Court*, 169 Cal. App. 4th 533, 552 (Cal. Ct. App. 2008); *accord Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 116 n.14 (Cal. Ct. App. 2004)("Imputation of retaliatory animus will be justified by any set of facts that would permit a jury to find that an intermediary, for whatever reasons, simply carried out the will of the actuator, rather than breaking the chain of causation by taking a truly

**17**

independent action"). There is no evidence that Romo or Brodgon were involved at all in Nevarez's decision; they merely reported the incident, and the information worked its way up the chain of command to Nevarez. The most likely explanation is that Romo was irritated about being called to account and made complaints about his accuser, either defensively or to direct attnetion from his conduct by playing "the blame game." It was not racially motivated.

Plaintiff also advances the conclusory assertion that "similarly situated non-African American officers would not have been subject to an IA investigation for the same conduct" for which Plaintiff was disciplined. Plaintiff provides no evidence in support of this contention. Plaintiff alleges that "Snow visited the Duty office on a regular basis and was not denied access and Romo...did not seek disciplinary action [against Snow]." (Doc. 81-1, Plaintiff's Response to DUMF No. 17). However, unlike Plaintiff, Snow did not issue any conflicting orders and was not "similarly situated." Plaintiff was not disciplined for accessing overtime records but rather for issuing an order to Barajas that conflicted with Romo's order.[4] Plaintiff points to no similarly-situated officer who was not disciplined for engaging in the conduct for which Plaintiff was disciplined.

There is no evidence that the Department's initiation and prosecution of disciplinary action related to Plaintiff's July 8,

---

[4] Whether Plaintiff's order conflicted with a valid, extant order from Romo is disputed, but immaterial. Plaintiff contends Romo's memo had expired and was no longer a valid order. Even assuming Plaintiff's position is correct, Plaintiff was not similarly situated to officers granted access to the overtime records, such as Snow, because those officers had not issued an arguably conflicting order, which prompted the investigation and disciplinary action against Plaintiff.

1  2006 conduct was racially motivated. Summary judgment on
2  Plaintiff's FEHA claim arising out of the disciplinary action is
3  GRANTED.

### 3. Retaliation Claim

5  In order to establish a prima facie case of retaliation under
6  FEHA, a plaintiff must show (1) he or she engaged in a "protected
7  activity," (2) the employer subjected the employee to an adverse
8  employment action, and (3) a causal link existed between the
9  protected activity and the employer's action. *Yanowitz*, 36 Cal.
10 4th at 1142. Plaintiff contends that the Internal Affairs
11 investigation and subsequent disciplinary action taken against him
12 were in retaliation for his February 21, 2006 email to Carrasco and
13 his filing of the March 1, 2006 informal grievance. (Opposition at
14 12). However, Plaintiff represents that his March 1, 2006
15 "grievance was based upon a violation of policy; not race."
16 (Opposition at 15).

17 According to Plaintiff's opposition, he first began to believe
18 that the disparate treatment regarding overtime assignments and
19 access to overtime records was racially motivated during the
20 Internal Affairs investigation, which was not initiated until
21 August 2006, several months *after* his email to Carrasco and his
22 filing of the informal grievance. Plaintiff's judicial admissions
23 that both his email to Carrasco and informal grievance were based
24 on violations of Department policy, not race, establish that
25 neither constituted protected activities under FEHA. In order to
26 constitute protected activity, Plaintiffs' conduct "must have
27 alerted his employer to his belief that discrimination, not merely
28 unfair personnel treatment, had occurred." *Mayfield v. Sara Lee*

**19**

*Corp.*, 2005 U.S. Dist. LEXIS 42458 *23 (N.D. Cal. 2005) (citing *Jurado v. Eleven-Fifty Corp.,* 813 F.2d 1406, 1412 (9th Cir. 1987) (finding employee complaint regarding scheduling change not protected activity) and *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-702 (3rd Cir. 1995) (finding employee complaint regarding promotion decision not protected activity)); *accord Lanagan v. Santa Cruz County Metro Transit Dist.*, 2010 U.S. Dist. LEXIS 43413 * 16 (N.D. Cal. 2010) (report of co-employee's negligence "not protected activity [under FEHA] because it has nothing to do with the FEHA's prohibitions"); *Timmons v. UPS*, 2007 U.S. Dist. LEXIS 57761 * 18 n. 10 (E.D. Cal. 2007) *reversed in part on other grounds by* 310 Fed. Appx. 973 (9th Cir. 2009)("alleged retaliation for safety concerns [plaintiff] raised...not protected activity under FEHA or ADA, as those statutes do not protect such whistleblowing activity").[5]

As neither Plaintiff's email to Carrasco nor his informal grievance were protected activities under FEHA, summary judgment on Plaintiff's claim for retaliation arising out of these activities must be GRANTED.[6]

**B. Federal Claims**

The FAC asserts claims under 42 U.S.C. §§ 1981, 1983, and 1985. The factual basis for Plaintiff's section 1981 claim is identical to the factual basis for his FEHA claim. (FAC at 9-10).

---

[5] The factual history section of Plaintiff's opposition alleges additional retaliatory acts that occurred in 2009 and 2010. (Opposition at 4-5). The FAC does not allege any FEHA claims based on these allegations.

[6] The court does not condone the conduct Plaintiff complains of or the treatment he was subjected to. However, no whistle-blower action is alleged. See Cal. Lab. Code § 1102.5.

The factual basis for Plaintiff's section 1985 claim is identical to the basis for his FEHA retaliation claim. (FAC at 12-13). The factual basis for Plaintiff's section 1983 claim is almost identical to the basis for his FEHA retaliation claim, however, the section 1983 claim asserts the additional allegation that Plaintiff was subjected to a hostile work environment. (FAC at 11-12).

### 1. **1981 Claim**

Plaintiff's section 1981 claim is predicated on Plaintiff's allegation that: (1) Romo's disparate assignment of overtime and restricting of access to overtime records was racially motivated; and (2) the initiation and prosecution of disciplinary action related to Plaintiff's July 8, 2006 conduct was retaliatory and racially motivated.

The same summary judgment test applies in both the section 1981 and FEHA contexts. *E.g., Lawson v. Reynolds Indus*., 264 Fed. Appx. 546, 549 n.2 (9th Cir. 2008) (unpublished) (citing *Manatt v. Bank of Am., NA*, 339 F.3d 792, 801 (9th Cir. 2003)(§ 1981) and *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001) (FEHA)). Because the factual basis for Plaintiff's section 1981 claim is the same as the basis for his FEHA discrimination claim, Defendant's motion for summary judgment on Plaintiff's section 1981 claim is GRANTED for the same reasons stated above.   See, e.g., *Peralta v. City & County of San Francisco*, 2011 U.S. App. LEXIS 8383 *2 (9th Cir. 2011) (unpublished) (noting that summary judgment was appropriate on both FEHA claims and section 1981 claims where Plaintiff failed to establish a prima facie case of discrimination).

**2. Section 1985 Claim**

To establish a § 1985(3) conspiracy claim, the plaintiff must show: "(1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury." *Scott v. Ross,* 140 F.3d 1275, 1284 (9th Cir. 1998)*; accord Hernandez v. City of Vancouver*, 277 Fed. Appx. 666, 671 (9th Cir. 2009) (unpublished) (citing *Scott*).

The FAC alleges that "Dyer, Garner, Martinez, Nevarez, and Romo conspired to...deny Plaintiff the exercise of his civil rights to be free from discrimination." (FAC at 12). The FAC further alleges that the "Department's initiation and prosecution of disciplinary action related to Plaintiff's July 8, 2006 conduct was retaliatory and racially motivated and was done in furtherance of the conspiracy of and by Defendants." (Id.). For reasons discussed above, Plaintiff presents no evidence that the disciplinary action he complains of was racially motivated. Plaintiff's own judicial admissions foreclose any retaliation claim based on the theory that the disciplinary action Plaintiff complains of was retaliation for objecting to racial discrimination. The actions Plaintiff alleges he was retaliated against for do not implicate any constitutional right. Summary judgment on Plaintiff's section 1985 claim is GRANTED.

**3. Section 1983 Claim**

Plaintiff's section 1983 claim alleges that "the IA unit was used to retaliate against officers who complained of discrimination or other unlawful conduct within the Department." (FAC at 11). For reasons discussed above, Plaintiff's judicial admissions

**22**

establish that the alleged retaliation Plaintiff complains of was not based on Plaintiff's objection to any racial discrimination. Plaintiff's section 1983 claim also appears to allege that the retaliatory acts complained of created a "racially hostile work environment." (FAC at 11).  To the extent the FAC seeks to assert a hostile work environment claim based on retaliation for objecting to racial discrimination, for the reasons stated above, no such retaliation is shown.  Nor is there is any evidence in the record that suggests Plaintiff was subjected to conduct sever and pervasive enough to alter the conditions of employment. *See, e.g., Manatt v. Bank of Am.*, 339 F.3d 792, 799 (9th Cir. 2003). Summary judgment on Plaintiff's section 1983 claim is GRANTED.

<u>**ORDER**</u>

For the reasons stated, IT IS ORDERED:

1) Summary judgment on Plaintiff's FEHA claims is GRANTED;

2) Summary judgment on Plaintiff's federal claims is GRANTED; and

3) Defendants shall submit a form of order consistent with this memorandum decision within five (5) days of electronic service of this decision.

IT IS SO ORDERED.

**Dated:    July 13, 2011**                    _____/s/ Oliver W. Wanger_____
                                         UNITED STATES DISTRICT JUDGE