UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LEWIS,<br><br>              Plaintiff,<br><br>   v.<br><br>CITY OF FRESNO, et al.,<br><br>              Defendants. | 1:08-cv-01062-OWW-GSA<br><br>**MEMORANDUM DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST RON MANNING (Doc. 76)** |

## I. INTRODUCTION.

Ron Manning ("Plaintiff") proceeds with this action pursuant to 42 U.S.C. 1983 and California Government Code §12900.

Defendants filed a motion for summary judgment on May 10, 2011. (Doc. 76). Plaintiff filed opposition on June 6, 2011. (Doc. 83). Defendants filed a reply on June 13, 2011. (Doc. 94)

## II. FACTUAL BACKGROUND.

Plaintiff is an African American police officer employed by the Fresno Police Department ("Department").

On the evening of October 27, 2007, Plaintiff was arrested for driving under the influence of alcohol. Officer Brian Phelps employed a twist lock to force Plaintiff to sit on the curb after Plaintiff verbally objected to Phelp's command to sit on the curb. Plaintiff requested that his wife be permitted to drive home the

1

vehicle Plaintiff was driving, but both Phelps and the supervising sergeant on the scene, Eric Eide, refused his request and caused the vehicle to be towed. Phelps prepared a police report concerning Plaintiff's arrest which stated that his initial stop of Plaintiff's vehicle was for having no front license plate.

Plaintiff appeared for a hearing before the Department of Motor Vehicles in connection with the suspension of Plaintiff's driver's license. At the hearing, Phelps testified that he stopped Plaintiff's vehicle for making an unsafe lane change, and that he suspected Plaintiff was attempting to avoid a DUI checkpoint. Phelps also testified that he had no information about the front license plate violation until after he stopped Plaintiff's vehicle. The hearing officer concluded that there was no probable cause for officer Phelp's initial stop of Plaintiff's vehicle.

As a result of his DUI arrest, Plaintiff was subjected to an Internal Affairs investigation ("IA investigation") pursuant to Department policy. Investigating sergeant Mindy Medina-Casto ("Casto") interviewed Plaintiff and Phelps in connection with the IA investigation. Phelps told Casto that Plaintiff had been uncooperative and unprofessional at the jail. Casto contacted jail personnel and was unable to confirm Phelps statement. Plaintiff advised Casto of the DMV hearing officer's finding of lack of probable cause, and Casto advised that such a finding had no import on the IA investigation. A recommendation that Plaintiff be suspended for 120 hours issued.

At a disciplinary hearing before Deputy Chief Roger Enmark on May 7, 2008, Plaintiff advised Enmark that Phelps had contradicted his report during the DMV hearing.

**2**

Plaintiff was prosecuted criminally for driving under the influence. The Fresno County Superior Court granted Plaintiff's motion pursuant to California Penal Code section 1538.5,[1] and on June 8, 2009, the District Attorney dismissed the charges against Manning. Manning advised the Department of the dismissal.

On May 22, 2008, Department Chief Jerry Dyer signed an Order of Suspension imposing 120 hours of suspension without pay on Plaintiff based on Enmark's recommendation.

### III. **LEGAL STANDARD**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier

---

[1] Section 1538.5 provides, in pertinent part: "A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds: (A) The search or seizure without a warrant was unreasonable."

**3**

of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id.* (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.
///
///
///

**4**

**IV. <u>DISCUSSION</u>.**

**A. FEHA Claims**

California's Fair Employment and Housing Act ("FEHA") makes it an "unlawful employment practice" for any employer "because of the race…to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code, § 12940(a). The elements of a FEHA claim for employment discrimination are (1) the employee's membership in a classification protected by the statute; (2) discriminatory animus on the part of the employer toward members of that classification; (3) an action by the employer adverse to the employee's interests; (4) a causal link between the discriminatory animus and the adverse action; (5) damage to the employee, and (6) a causal link between the adverse action and the damage. *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 713 (Cal. Ct. App. 2008).

FEHA's discrimination provision addresses only explicit changes in the "terms, conditions, or privileges of employment." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (Cal. 2010) (citing (§ 12940(a)). In the case of an institutional or corporate employer, the institution or corporation itself must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action. *Id.*

The Complaint alleges, *inter alia*, that the disciplinary action taken against him in connection with his DUI arrest was motivated by racial discrimination. In support of his contention, Plaintiff provides evidence that he was disciplined more harshly

5

than all but two other officers investigated for DUI's between 2005 and 2010. (Doc. 83-3, Plaintiff's Statement of Undisputed Fact 30).

Defendants offer only the following argument in support of their motion for summary judgment on Plaintiff's FEHA claim:

> The City may defeat a FEHA claim by producing evidence of a nondiscriminatory reason for its actions. *Flait v. North American Watch Corp.*, 3 Cal.App.4th 467, 479 (1992). Here, it is undisputed that Manning was never demoted, suspended, fined or terminated in the last five years, except for the suspension at issue. (Dec. of Hains, ¶3). Moreover, as established, the City had a legitimate reason to issue a suspension based on Manning's conduct on October 27, 2007.

(Doc. 76, MSJ at 16). Defendants argument is not dispositive, as Plaintiff's claim is that he received overly-harsh discipline because of his race. The fact that it was appropriate, if it was, to take some measure of disciplinary action against Plaintiff does not preclude a finding that Plaintiff was discriminated against; the operative inquiry is whether Plaintiff was subjected to excess discipline motivated by racial animus. Defendants' conclusory argument is insufficient to carry their burden imposed by Rule 56. Questions of fact exist concerning whether Plaintiff was disciplined more harshly than non-African American's cited for similar conduct, and if so, whether such discipline was motivated by racial discrimination. Defendants motion for summary judgment on Plaintiff's FEHA claim is DENIED.

**B. Section 1983 Claim**

Section 1983 requires a claimant to prove "(1) that a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege or immunity protected by the

**6**

Constitution or laws of the United States." *E.g.*, *White v. Roper*, 901 F.2d 1501, 1503 (9th Cir. 1990) (footnote omitted). The Complaint alleges violation of Plaintiff's rights under the Fourteenth and Fourth Amendments.

**1. Fourth Amendment Claim**

The Fourth Amendment to the United States Constitution prohibits unreasonable seizures. The reasonableness of a particular seizure requires balancing of the nature and quality of the seizure against the governmental interest at stake. *See, e.g., Liberal v. Estrada*, 632 F.3d 1064, 1079 (9th Cir. 2011).

**a. Reasonableness of Phelp's Traffic Stop**

Traffic stops are investigatory stops that must be based on reasonable suspicion that a traffic law violation occurred. *E.g., id.* at 1077; *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005). Reasonable suspicion consists of "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996). A "gloss on this rule prohibits reasonable suspicion from being based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." *United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir. 1994).

Defendants contend that Phelp's initial stop of Plaintiff was justified by reasonable suspicion to believe that Plaintiff had made an unsafe lane change. Defendants' statement of undisputed fact number two provides:

**7**

      Officer Phelps believed that Manning made an abrupt lane change without signaling in proximity of the DUI checkpoint

The credibility of Phelp's version of events is a matter for the jury. Phelps has given conflicting explanations of the basis for his traffic stop of Plaintiff. Phelp's police report indicates Plaintiff was pulled over because his vehicle did not have a front license plate. Phelps testified at the DMV hearing, however, that he pulled Plaintiff over for making an abrupt lane change. Both a DMV hearing officer and the Superior Court expressed doubts about Phelp's explanation, and the Superior Court suppressed the State's evidence due to its rejection of Phelp's version of events.[2]

    The factual dispute regarding the credibility and basis for Phelp's traffic stop of Plaintiff precludes summary judgment. This factual dispute also precludes the grant of qualified immunity. Clearly establish federal law requires traffic stops to be based on reasonable suspicion. *E.g., Liberal*, 632 F.3d at 1077 ("It has been settled law since the 1970's that in order for a police officer to initiate an investigatory stop of a motorist, there must at least exist reasonable suspicion that the motorist is engaging in illegal activity") (citation omitted). Summary judgment is DENIED on the issue of the reasonableness of Phelp's traffic stop of Plaintiff.

///

///

---

[2] Plaintiff asserts res judicata concerning the reasonableness of Phelp's traffic stop, but the Superior Courts order is not before the court. Further, Plaintiff represents that the court found that the traffic stop was not supported by probable cause–this is the incorrect constitutional standard, however, as traffic stops require only reasonable suspicion.

**8**

### b.  Reasonableness of Plaintiff's Arrest

Warrantless arrests require probable cause. *E.g., United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id*. Plaintiff cannot seriously dispute that probable cause existed to effect his arrest once Phelp's initiated the traffic stop.  It is undisputed that Plaintiff admitted he had been drinking and blew a .08 blood alcohol level, the statutory minimum for presumptive blood alcohol content, in a breath test before he was arrested.  Objective probable cause therefor existed to believe Plaintiff was driving under the influence.  Summary judgment on the issue of probable cause to arrest Plaintiff is GRANTED.

### 2. Fourteenth Amendment Claim

The Complaint appears to allege a Fourteenth Amendment claim based on alleged discriminatory treatment of Plaintiff during his arrest.  Plaintiff complains that he was booked instead of merely cited for the DUI, and that his wife was not permitted to drive the vehicle home; Plaintiff alleges other non-African American officers have received such accommodations when suspected of driving under the influence.  Plaintiff does not refer to specific instances or conditions of release of vehicles to responsible parties in DUI cases.  Disparate treatment of non-African American officers may support an inference of discrimination if Plaintiff has such foundational evidence and knowledge that any Defendant was involved in the instances Plaintiff refers to in which other officers were

given citations for DUI and not arrested. The foundation includes that the "comparable" situations Plaintiff describes were under the influence to the same degree Plaintiff was during his arrest. Summary judgment is DENIED on Plaintiff's Fourteenth Amendment claim subject to a foundational evidentiary showing of comparable incidents.

### 3. Monell Claim

As to Plaintiff's claim that his traffic stop was not supported by reasonable suspicion, he has not offered evidence that the Department has a discriminatory "driving while black" policy or practice of conducting unreasonable traffic stops of African Americans, or that any other basis for Monell liability exists in connection with Plaintiff's traffic stop. Summary judgment is GRANTED to the City as to the Monell claim on the civil rights action.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Summary judgment on the issue of existence of probable cause to arrest Plaintiff is GRANTED;

2) Summary judgment on the issue of existence of reasonable suspicion to effect a traffic stop of Plaintiff is DENIED;

3) Summary judgment on Plaintiff's Fourteenth Amendment claim is DENIED subject to a Fed. R. Evid. 104 foundation;

4) Summary judgment on Plaintiff's FEHA claims is DENIED;

5) The City's motion for summary judgment on the Monell claim is GRANTED; and

6) Defendants shall submit a form of order consistent with this memorandum decision within five (5) days of electronic

service of this decision.

IT IS SO ORDERED.

**Dated:   July 13, 2011**                              **/s/ Oliver W. Wanger**
                                                 UNITED STATES DISTRICT JUDGE