**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES LEWIS, et al.,<br><br>     **Plaintiff,**<br><br>     v.<br><br>CITY OF FRESNO, et al.,<br><br>     **Defendants.** | **1:08-cv-01062-OWW-GSA**<br><br>**MEMORANDUM DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST GERALD MILLER (Doc. 73)** |

## I. INTRODUCTION.

Gerald Miller ("Plaintiff") proceeds with this action pursuant to 42 U.S.C. 1983 and California Government Code §12900.

Defendants filed a motion for summary judgment on May 6, 2011. (Doc. 73). Plaintiff filed opposition on June 6, 2011. (Doc. 82). Defendants filed a reply on June 13, 2011. (Doc. 91).

## II. FACTUAL BACKGROUND.

Plaintiff is an African American police officer employed by the Fresno Police Department ("Department").

On September 10, 2007, Plaintiff was driving his personal vehicle on Fowler Avenue near the intersection of Tulare in Fresno County while off-duty. A vehicle passed Plaintiff, and a few moments later, Officer Anthony Bustos ("Bustos") activated his lights, drove past Plaintiff's vehicle, and initiated a traffic

1

stop of the vehicle that had passed Plaintiff.  The vehicle pulled into a Seven-Eleven Parking lot, followed by Bustos.  Plaintiff also drove into the Seven-Eleven parking lot and parked in front of the entrance to the store.

As Plaintiff exited his vehicle, Bustos pointed his finger at Plaintiff and yelled "you're lucky you're not getting a ticket too."  Miller responded "for what?" and Bustos replied "speeding."  Plaintiff started to turn toward the store and said in an angry voice "you need to get on with that."  Bustos then asked Plaintiff for identification.

Plaintiff walked to the passenger side of his vehicle, opened the door, got his driver's license and police ID out of his wallet, and handed both items to Bustos.  Plaintiff started to walk alongside the driver's side of his vehicle towards the store and Bustos ordered him to stop.  Plaintiff started back in the store saying, "you have my IDs right there."  Bustos told Plaintiff that if he went in the store he would be arrested.  Bustos requested assistance and other officers arrived on scene, including Sergeant John Chandler. Plaintiff made known his objections to his detention.

On October 24, 2007, Plaintiff appeared in court with legal counsel, Franz Criego, for the traffic citation issued by Bustos.  During the course of questioning Officer Bustos, Criego made a comment using the term "DWB" to which Bustos responded "your Honor, I'm now being accused of racist remarks and I probably think we ought to have the City Attorney here now."  Although Plaintiff's hearing was the last hearing scheduled that day, three officers from the Department remained in the courtroom during his hearing,

**2**

including Officer Stuart Riba.

On September 11, 2007, Plaintiff lodged a formal citizen's complaint regarding to Bustos' conduct during the September 10, 2007 traffic stop. An Internal Affairs investigation was conducted by Bustos' supervisor, John Chandler, who had responded to the scene. On November 7, 2007, Chandler prepared a Memorandum directed to Department Chief Jerry Dyer through Captain Greg Garner and officer Patrick Farmer identified as Personnel Complaint IA 2007-0120. Plaintiff's name was handwritten on the face of the November 2007 memorandum as an accused. The November 2007 Memorandum states a finding that Plaintiff violated professionalism standards. Plaintiff was never informed of the investigation as required by Department policy.

On October 25, 2007, the day after Plaintiff's traffic court hearing, an Internal Affairs investigation was initiated against Plaintiff contending he had engaged in misconduct at the hearing by (a) identifying himself as an officer; (b) contending the citation was racially motivated; (c) accessing records improperly or for an improper purpose; and (d) using profanity at the hearing. The October 2007 Internal Affairs instigation was conducted by Sgt. Mindy Medina-Casto.

On September 8, 2008, Plaintiff filed a complaint with California's Department of Fair Employment and Housing ("DFEH") alleging that the City had failed to prevent race discrimination and/or retaliation with reference to the subject traffic incident and the court appearance.

In 2009, Plaintiff was involved in a collision on duty when another car ran a red light. The matter went through an Internal

**3**

Affairs investigation and Plaintiff received a documented oral reprimand.

In 2010, Plaintiff was written up for insubordination by Sgt. Alvarez. Plaintiff protested that he felt Alvarez's conduct was racially motivated. No investigation of the alleged racial harassment was conducted.[1]

### III. **LEGAL STANDARD**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving

---

[1] Plaintiff's allegation concerning the 2010 action by Alvarez is not alleged in the complaint.

**4**

party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id.* (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

**IV. <u>DISCUSSION</u>**.

**A. FEHA Claims**

California's Fair Employment and Housing Act ("FEHA") makes it an "unlawful employment practice" for any employer "because of the race...to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code, § 12940(a). The elements of a FEHA claim for employment discrimination are (1) the employee's membership in a

**5**

classification protected by the statute; (2) discriminatory animus on the part of the employer toward members of that classification; (3) an action by the employer adverse to the employee's interests; (4) a causal link between the discriminatory animus and the adverse action; (5) damage to the employee, and (6) a causal link between the adverse action and the damage. *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 713 (Cal. Ct. App. 2008).

FEHA's discrimination provision addresses only explicit changes in the "terms, conditions, or privileges of employment." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (Cal. 2010) (citing (§ 12940(a)). In the case of an institutional or corporate employer, the institution or corporation itself must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action. *Id.*

Plaintiff identifies three alleged adverse employment actions taken against him: (1) a "blue sheet" counseling memo he received on November 7, 2007 stating that he "violated professionalism" during the traffic stop by using profanity; this is official disciplinary action; (2) an Internal Affairs investigation related to his conduct during the court hearing on his speeding ticket; and (3) the disciplinary action taken against him in 2010 by Alvarez. (Doc. 82, Opposition at ).[2] However, the alleged discriminatory action taken by Alvarez occurred *after* Plaintiff filed the

---

[2] The complaint also alleges that reassignment of Bustos to Plaintiff's division was retaliatory, but Plaintiff has apparently abandoned this theory.

**6**

complaint in February 2009. To the extent Plaintiff has FEHA claims arising out of Alvarez's conduct, such claims are beyond the ambit of the complaint.[3]

### 1. FEHA Discrimination

Plaintiff contends that the blue sheet he was issued in 2007 and the Internal Affairs investigation concerning his conduct at the court hearing on his speeding ticket were racially motivated. Plaintiff provides no direct evidence of racial animus; accordingly, Plaintiff must rely on the McDonald Douglass framework. *See, e.g., Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (Cal. 2000). Under the McDonald Douglass framework, absent evidence of circumstances supporting an inference racial discrimination, there is a failure of proof. *Id.*

It is undisputed that the individual responsible for issuing the blue sheet to Plaintiff was Deputy Chief Nevarez. It is also undisputed that Nevarez decision was not based on Plaintiff's race. (Doc. 82-1, Plaintiff's Response to DUMF No. 26). Finally, it is undisputed that Nevarez has issued blue sheets to non-African American officers for using profanity in public, and that Bustos also received a blue sheet in connection with the traffic stop incident. (Doc. 82-1, Plaintiff's Response to DUMF Nos. 25, 27). There is no evidence that the blue sheet Nevarez issued was motivated by racial animus.

Plaintiff also contends that the Internal Affairs investigation was motivated by racial discrimination. It is undisputed that Officer Riba made the decision to report

---

[3] Allegations against Alvarez may be considered for their probative value to the extent such allegations are relevant to the claims pled in the complaint.

**7**

Plaintiff's conduct during the court hearing, leading to the Internal Affairs investigation. Other than Plaintiff's race, no evidence is offered that Riba was motivated by racial animus.

**2. FEHA Retaliation**

An employee is protected from retaliation even if there is no discrimination in fact, provided the employee has a reasonable, good faith belief that FEHA is being violated. *E.g., Sada v. Robert F. Kennedy Med. Ctr.*, 56 Cal. App. 4th 138, 160 n.27 (Cal. 1997) (citations omitted). Accordingly, the fact that Plaintiff's substantive claims of racial discrimination lack evidentiary support does not preclude his retaliation claim.[4]

Whether the actions Plaintiff complains of were retaliatory is subject to factual disputes that preclude summary judgment. Plaintiff objected to perceived racial discrimination in both his citizen's complaint to the Department and at his court hearing on the citation. Shortly thereafter, Plaintiff was issued a blue sheet and subjected to an Internal Affairs investigation. The temporal proximity of the blue sheet and Internal Affairs investigation to Plaintiff's protected activity raises an inference of retaliation sufficient to defeat summary judgment. A memorandum prepared in connection with the Internal Affairs investigation suggests that Plaintiff would have been subjected to discipline but for the investigator's conclusion that Plaintiff did not know his attorney would make allegations of discrimination against Busto. (Doc. 82-11 at 34, Ex. 9 to Church Decl.). The memorandum provides, in pertinent part:

---

[4] Whether Plaintiff had a reasonable good faith belief that he was being discriminated against is a factual question that remains open.

**8**

> Had Miller known his attorney was going to make racial allegations against [Busto] on the witness stand, Miller's identification of himself as an officer would have amounted to a lack of sound judgment. Although the racial profiling allegations made against [Busto] undoubtedly discredited the Department because two Fresno Police Officers were involved, Miller was not directly responsible for it.

A jury presented with the Internal Affairs memorandum could draw the reasonable inference that the Department considers an officer's objection to alleged racial discrimination conduct worthy of reprimand to chill such complaints. The evidence Plaintiff has presented is sufficient to create a factual dispute on the issue of whether the blue sheet and Internal Affairs investigation were retaliatory for Plaintiff's claim of race discrimination in the way his traffic matter was handled by Bustos and the Department.

Defendants contention that neither the blue sheet nor the Internal Affairs investigation constituted adverse action within the meaning of FEHA is unavailing. *See, e.g., Plymale v. City of Fresno*, 2009 U.S. Dist. LEXIS 58920 * 12-14 (E.D. Cal 2009) (noting lack of binding authority for proposition that Internal Affairs investigation was not adverse action and that investigation disrupted employment). Defendant's authorities do not conclusively establish the actions Defendant complains of are insufficient as a matter of law to constitute adverse employment action. Summary judgment on Plaintiff's FEHA retaliation claim is DENIED

**B. Section 1983 Claim**

Section 1983 requires a claimant to prove "(1) that a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States." *E.g.*, *Browne v. San*

**9**

*Francisco Sheriff's Dep't,* 616 F. Supp. 2d 975, 982 (N.D. Cal. 2009) (citing *White v. Roper*, 901 F.2d 1501, 1503 (9th Cir. 1990)). The complaint alleges violation of Plaintiff's rights under the Fourteenth and Fourth Amendments arising out of Bustos' issuance of the speeding ticket to Plaintiff.

The Fourth Amendment to the United States Constitution prohibits unreasonable seizures. The reasonableness of a particular seizure requires balancing of the nature and quality of the seizure against the governmental interest at stake. *See, e.g., Liberal v. Estrada*, 632 F.3d 1064, 1079 (9th Cir. 2011). Traffic stops are investigatory stops that must be based on reasonable suspicion that a traffic law violation occurred. *E.g., id.* at 1077*; United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005). Reasonable suspicion consists of "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996). A "gloss on this rule prohibits reasonable suspicion from being based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." *United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir. 1994).

Plaintiff contends that Bustos did not have probable cause to detain Plaintiff or to issue him a traffic citation for speeding. Probable cause was not required, however, as reasonable suspicion is the standard applicable to traffic stops. *Id; accord Liberal*, 632 F.3d at 1078 (noting lack of reasonable suspicion where no

**10**

traffic law had been violated). Further, Plaintiff's contention that "Bustos did not assert his authority until after probable cause for [the citation's] initial issuance had dissipated" is devoid of merit.[5] Reasonable suspicion of a traffic violation based on an officer's personal observations does not "dissipate" with the passage of a few moments. The operative inquiry is whether Bustos observed sufficient objective facts that, combined with reasonable inferences, a reasonable suspicion of a traffic violation existed.

Bustos submits a sworn declaration which states that he observed three vehicles traveling approximately 35-38 miles per hour in a 25 miles per hour school zone. Bustos states that Plaintiff's vehicle was the third vehicle, and that he clocked Plaintiff at 35 mph on his radar. Bustos made the decision to pull over the second vehicle, which he believed had been driving faster than the first vehicle. Plaintiff disputes whether Bustos' radar could have differentiated between his vehicle and the other two. Assuming arguendo this is a genuine factual dispute, it is immaterial. Even if one of the other three vehicles was the vehicle registered by Bustos' radar, Bustos had sufficient opportunity to observe the events to lead him to reasonably suspect that Plaintiff was traveling in excess of the posted speed limit.

There is no allegation that Bustos' seizure of Plaintiff was unnecessarily protracted or otherwise unreasonable. If Bustos' had

---

[5] Equally devoid of merit is Defendants' contention that no seizure was effected. Accepting Plaintiff's version of the facts as true, Bustos restrained Plaintiff's movement and ordered him to remain stationary under threat of arrest. It is unnecessary to address Defendants' invocation of *Heck v. Humphrey*, 512 U. S. 477 (1994), as Plaintiff's section 1983 claim does not survive.

**11**

reasonable suspicion to believe Plaintiff was speeding, Plaintiff cannot prevail on a Fourth Amendment claim arising out of his traffic stop. Summary judgment is GRANTED as to this claim.

### 2. Fourteenth Amendment Claim

Plaintiff contends that his speeding ticket was racially motivated. Plaintiff presents no evidence in support of his allegation of racial animus on Bustos' part, however. Instead, Plaintiff makes the conclusory assertion that "similarly situated persons would not have been subjected to Bustos' selective enforcement and issuance of a traffic citation." This inferentially suggests that other officers are not cited under comparable circumstances. However, Plaintiff offers no evidence that such asserted practice is preferential treatment of fellow officers suspected of traffic violations based on race. Plaintiff does not identify any similarly situated individuals. Summary judgment is GRANTED as to this claim.

### 3. Monell Claim

As Plaintiff has no valid civil rights claim under section 1983, there is no basis for Monell liability. Summary judgment is GRANTED as to this claim.

### ORDER

For the reasons stated, IT IS ORDERED:

1) Summary judgment is GRANTED on Plaintiff's FEHA discrimination claim;
2) Summary judgment is DENIED on Plaintiff's FEHA retaliation claim;
3) Summary judgment is GRANTED on Plaintiff's federal claims; and

**12**

4) Defendants shall submit a form of order consistent with this memorandum decision within five (5) days of electronic service of this decision.

IT IS SO ORDERED.

**Dated:  July 13, 2011**                    **/s/ Oliver W. Wanger**
                                     UNITED STATES DISTRICT JUDGE